**In re Dolores BENEDICT, a/k/a Dolores Cogliano, Debtor.**

**EUROPEAN AMERICAN BANK, Petitioner–Appellant,**

**v.**

**Dolores BENEDICT, a/k/a Dolores Cogliano, Respondent– Appellee.**

**No. 1094, Docket 95–5064.**

United States Court of Appeals, Second Circuit.

Argued March 4, 1996.

Decided July 22, 1996.

Bruce H. Babitt, Wolman, Carponter & King, L.L.P., New York City, for Petitioner–Appellant.

Neal M. Rosenbloom, New York City (Gary I. Selinger, Finkel Goldstein Berzow & Rosenbloom, New York City, of counsel), for Respondent–Appellee.

Before: MINER, JACOBS and CABRANES, Circuit Judges.

MINER, Circuit Judge:

Petitioner-appellant European American Bank ("EAB") appeals from a judgment of the United States District Court for the Southern District of New York (Sotomayor, J.) affirming an order of the United States Bankruptcy Court that: (1) rescinded its prior order extending the time for EAB to file a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(c); (2) precluded EAB from filing a future complaint to determine the dischargeability of the debt; and (3) discharged the debt owed to EAB. The district court found that Bankruptcy Rule 4007(c), which governs the time period for filing complaints to determine the dischargeability of a debt pursuant to § 523(c), was a "strict statute of limitations" that could not be extended by the bankruptcy court once it had expired. Based on this interpretation, the district court held that, because the original order of the bankruptcy court that extended EAB's time to file the complaint was entered after the Rule 4007(c)

time period had expired, the bankruptcy court's rescission of the order was proper.

For the reasons that follow, we vacate the judgment of the district court and remand for further proceedings consistent herewith.

## BACKGROUND

On January 30, 1991, EAB entered into a credit agreement with Cogliano Benedict Photographics, Inc. ("CBP"), a company owned and operated by respondent-appellee Dolores Benedict. The agreement permitted CBP to borrow up to $75,000 on a line of credit provided by EAB. Prior to entering into the credit agreement, Benedict had agreed to guarantee any advances, loans, or extensions of credit made to CBP by EAB. On April 13, 1993, Benedict filed a Chapter 11 bankruptcy petition. At that time, Benedict was liable to EAB for $75,000 plus interest on the line of credit by reason of the guarantee.

After Benedict filed for bankruptcy, notice was sent to Benedict's creditors, including EAB, notifying them that August 23, 1993 was the last day to file complaints to determine the dischargeability of debts.[1] This date was extended to January 10, 1994, when the bankruptcy court, on September 1, 1993, converted Benedict's Chapter 11 case to a case under Chapter 7.

Meanwhile, EAB, believing that Benedict may have fraudulently induced it to provide the line of credit to CBP, requested that Benedict provide it with documents, such as Benedict's personal tax returns and the financial records of CBP. EAB also sought Benedict's appearance at a Bankruptcy Rule 2004 examination. EAB maintains that its discovery efforts were hindered by Benedict's continuing recalcitrant behavior. EAB asserts that, on various occasions during the fall of 1993, it was led to believe that it would receive the documents it requested from Benedict and that Benedict would appear at a Rule 2004 examination. However, EAB

---

1. Pursuant to § 523(c), certain debts may be excepted from discharge. For example, debts that arise from loans obtained by false pretenses or fraud, or debts created by malicious injury to property of another entity may be excepted from discharge provided that the creditor initiates proceedings in the bankruptcy court to determine nondischargeability. *See* 3 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 523.11, at 523–66 to 523–67 (15th ed.1996). A creditor may initiate these proceedings by filing a complaint to determine the issue of dischargeability. *Id.* at 523–67.

maintains that Benedict never complied with EAB's discovery demands.

On November 18, 1993, EAB moved in bankruptcy court to compel discovery and to require Benedict's attendance at a Rule 2004 examination or, alternatively, to dismiss the bankruptcy proceeding entirely. The motion had a return date of December 20, 1993, which was three weeks before the January 10, 1994 deadline for filing complaints to determine dischargeability. However, at Benedict's request, and with EAB's consent, the hearing on the motion was adjourned until February 7, 1994.

On January 11, 1994, an 11 U.S.C. § 341(a) creditors' meeting was held. Immediately following the creditors' meeting, Benedict agreed to reaffirm the debt that she owed to EAB. On January 31, 1994, a reaffirmation agreement signed by Benedict, Benedict's attorney, Joel Bohmart, and Bruce Babitt, attorney for EAB, was executed. The reaffirmation agreement provided, in part, as follows:

> 2. That [Benedict] agrees to reaffirm the $87,319.22 plus interest from January 31, 1994 due and owing to EAB.
>
> . . . .
>
> 4. This agreement may be rescinded by [Benedict] at any time prior to discharge or within sixty days after it is filed with this Court, which ever [sic] occurs later, by giving notice of rescission to the other party to the agreement by certified mail.
>
> 5. This agreement is the entire agreement between the parties and oral agreements or representations made by or between the parties are hereby declared void and unenforceable.

In tandem with the reaffirmation agreement, the parties also executed a "Stipulation Extending the Time to File Complaint to Determine the Dischargeability of Debt" (the "stipulation"). The stipulation was signed by both Benedict and her attorney, Bohmart, and by Fred Ferrara, an EAB representative. The stipulation provides as follows:

> On January 31, 1994, Dolores Benedict aka/dba Dolores Cogliano, Debtor herein, entered into a Reaffirmation Agreement with [EAB]. The parties have agreed that should Debtor rescind the Reaffirmation Agreement at any time prior to discharge, or within sixty (60) days after it is filed with the Court, or April 18, 1994, whichever occurs later, then EAB will still have available against Debtor all remedies provided by the Bankruptcy Code, including the opportunity to file a Complaint under 11 U.S.C. § 523 to determine the dischargeability of its debt.

The bankruptcy court was advised of the reaffirmation agreement and the stipulation, and a hearing was scheduled for March 3, 1994. On the morning of March 3rd, the bankruptcy judge met in chambers with Benedict without the presence of counsel for Benedict or counsel for EAB. After the meeting, the bankruptcy judge extended the date to approve or disapprove the reaffirmation agreement, stating that the agreement was not in Benedict's best interest. At the hearing held after the meeting in chambers, the bankruptcy judge asked EAB's counsel whether the deadline to object to discharge had expired. EAB's counsel mistakenly replied, "It will expire, I believe, next week sometime." The bankruptcy judge then agreed to sign an order extending EAB's time to file a complaint to determine the dischargeability of its debt and directing Benedict to appear for a Rule 2004 examination. The order was signed on March 11, 1994 (the "March Order"). The March Order stated:

> The motion of [EAB was made] to compel discovery and require debtor's attendance at an examination and/or, in the alternative, to dismiss the bankruptcy case, which was to be settled pursuant to a reaffirmation agreement to be approved before the undersigned on March 3, 1994. After hearing the debtor, the debtor's attorney and EAB's counsel, the reaffirmation agreement was rejected, and it is
>
> ORDERED, that the debtor appear at a 2004 examination on or before April 15, 1994, and it is further
>
> ORDERED that the time for EAB to file a complaint objecting to debtor's discharge pursuant to § 523, is hereby extended to June 20, 1994 effective upon entry of this order.

Subsequently, Benedict obtained new counsel, who informed EAB that Benedict now objected to the March Order on the ground that it permitted EAB to file an untimely complaint to determine the dischargeability of its debt. According to Benedict's new counsel, once the January 10, 1994 deadline for filing complaints to determine dischargeability of debts had passed, neither the bankruptcy court nor the parties could extend the time for filing. Benedict's new counsel also sent a notice to EAB advising that Benedict was rescinding the reaffirmation agreement.

On June 13, 1994, Benedict moved to vacate the March Order to the extent that it extended EAB's time to file a complaint to determine dischargeability. The bankruptcy court held a hearing regarding the matter on June 28, 1994. At the hearing, the bankruptcy court concluded that the time period for filing complaints to determine dischargeability of debts "cannot be extended and it's not something that can be resucitated [sic] either." Thus, because the time period had expired by the time the parties executed the stipulation and the March Order was filed, the bankruptcy court ordered that the March Order be vacated. The bankruptcy court also ruled "that EAB cannot file and prosecute a complaint objecting to [Benedict's] discharge, or to the dischargeability of the obligation owed by [Benedict] to EAB." Finally, the bankruptcy court discharged the debt that Benedict owed to EAB.

On September 30, 1994, EAB appealed the bankruptcy court's order to the district court. Like the bankruptcy court, the district court found that the time period for filing complaints to determine dischargeability must be strictly complied with, and that once expired it can be revived only in rare circumstances. The district court concluded that such circumstances were not present in this case and affirmed the order of the bankruptcy court. This appeal followed.

## DISCUSSION

The time period for filing complaints to determine dischargeability is governed by Rule 4007(c) of the Federal Bankruptcy Rules, which provides:

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a). The court shall give all creditors not less than 30 days notice of the time so fixed in the manner provided in Rule 2002. On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Bankruptcy Rule 9006(b)(3) states that: "The court may enlarge the time for taking action under Rule[ ] ... 4007(c) ... only to the extent and under the conditions stated in [that] rule[ ]."

EAB argues that the district court and the bankruptcy court erred in interpreting Rule 4007(c) as a strict statute of limitations that only can be extended by a timely motion. EAB maintains that, in certain circumstances, equity requires a court to extend the Rule 4007(c) time period even though it may have expired. According to EAB, such circumstances are presented in this case because Benedict acted in bad faith by failing to comply with EAB's discovery demands.

Whether a bankruptcy court has the power to extend the Rule 4007(c) time period after it has expired is a question on which courts are divided. Several courts have held that the time period imposed by Rule 4007(c) is jurisdictional and thus, once it has expired, it cannot be extended by the parties or by the bankruptcy court. For instance, in *In re Kirsch*, 65 B.R. 297 (Bankr.N.D.Ill.1986), the debtor, 31 days after a verdict was returned finding that his debt was nondischargeable, argued for the first time that the creditor's complaint to determine dischargeability was untimely filed, and, therefore, that the creditor should have been barred from claiming that the debt was nondischargeable. The bankruptcy court found that, because the time limits imposed by Rule 4007(c) are jurisdictional, "[o]nce the Rule 4007(c) time has elapsed, a properly scheduled creditor can never raise the question of the nondischargeability of a claim ... in the Bankruptcy

Court or in any other forum." *Id.* at 299. The court then vacated the discharge verdict. The bankruptcy court concluded that, although "[t]he result is automatic and sometimes leads to harsh results ..., Congress intended to establish a system whereby certain types of nondischargeability claims would be automatically cut off after a relatively short period of limitations in order to prevent debtors from being harassed by creditors after their claims had been discharged in bankruptcy." *Id.* at 299–300.

Other courts have followed *Kirsch* in holding that the time period imposed by Rule 4007(c) is jurisdictional. *See In re Poskanzer,* 146 B.R. 125, 132 (D.N.J.1992) (stating that "the bankruptcy court's holding[ ] in ... *Kirsch* comport[s] with the general principle, recognized by the Courts of Appeal, that courts have limited discretion to extend the bar date beyond the period stipulated in the Bankruptcy Rules"); *In re Barley,* 130 B.R. 66, 69 (Bankr.N.D.Ind.1991) (holding that "[a] timely complaint is a jurisdictional prerequisite to a creditor's right to relief"); *In re Booth,* 103 B.R. 800, 802 (Bankr.S.D.Miss. 1989) ("Because Rules 4007(c) and 9006(b) provide a jurisdictional basis for complaints objecting to dischargeability under Section 523(c), there can be no waiver for objecting to the timeliness of the complaint.").

Other courts, however, without reaching the question of whether the time period imposed by Rule 4007(c) is jurisdictional, have permitted late filings of complaints to determine dischargeability where the bankruptcy court has affirmatively misled a creditor by setting an incorrect deadline. *See In re Themy,* 6 F.3d 688, 690 (10th Cir.1993) (holding that "when the court's act affirmatively misleads the creditor as to a deadline .... the bankruptcy court [is] within its authority to accept [the creditor's] complaint after the sixty-day period expire[s]"); *In re Kennerley,* 995 F.2d 145, 148 (9th Cir.1993) (stating that late-filed complaints objecting to discharge may be allowed when a court explicitly misleads a party as to a deadline); *In re Anwiler,* 958 F.2d 925, 928–29 (9th Cir.) (same), *cert. denied,* 506 U.S. 882, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992).

Finally, some courts explicitly have rejected the idea that the time period imposed by Rule 4007(c) is jurisdictional and have found that a bankruptcy court may extend the time for a creditor to file a complaint to determine dischargeability after the Rule 4007(c) time period has expired, if equity so requires. *See In re Santos,* 112 B.R. 1001, 1006 (9th Cir. BAP 1990) (determining "that the deadlines for filing dischargeability complaints and objections to discharge set forth in Rules 4007(c) and 4004(a) are not jurisdictional time limits" and are subject to the defenses of estoppel and waiver); *see also In re Begue,* 176 B.R. 801, 804 (Bankr.N.D.Ohio 1995) ("This court thus joins other courts that have viewed the deadline set forth in B.R. 4007(c) not as jurisdictional but rather as a statute of limitations. As such this statutory filing deadline is subject to the defenses of waiver, estoppel, and equitable tolling." (citations omitted)); *In re Welsh,* 138 B.R. 630, 631 (Bankr.M.D.Fla.1992) (holding that Rule 4007(c) is procedural and not jurisdictional).

■ We agree with the third line of cases and hold that the time period imposed by Rule 4007(c) is not jurisdictional. The Supreme Court has stated that "[s]tatutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling." *United States v. Locke,* 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 1792 n. 10, 85 L.Ed.2d 64 (1985). There is nothing in the Bankruptcy Code that persuades us to hold that Rule 4007(c) is any different from a statutory provision that imposes a filing deadline. Nor do we perceive that there is a controlling policy goal that would be served by holding that Rule 4007(c) is jurisdictional. Our conclusion also is consistent with the line of cases that has allowed an extension of the time period when the creditor was affirmatively misled by the bankruptcy court as to the filing deadline. *See, e.g., In re Themy,* 6 F.3d at 688. Since equitable considerations cannot excuse a jurisdictional defect, there is implicit in those cases the concept that Rule 4007(c) merely establishes a filing deadline.

■ Having decided that the time period imposed by Rule 4007(c) is not jurisdictional and thus is subject to waiver, estoppel, and equitable tolling, we now turn to the issue of

whether the circumstances in the present case required the bankruptcy court to extend EAB's time to file a complaint to determine dischargeability. EAB argues that, because of Benedict's recalcitrant behavior in complying with EAB's discovery requests, it should have been allowed to file an untimely complaint. While in certain circumstances this may be an appropriate basis to extend a creditor's time to file a complaint to determine dischargeability, in this case it does not provide a sufficient ground in light of the bankruptcy court's finding that Benedict did not act in bad faith.

 We prefer to sustain the bankruptcy court's March Order, which extended EAB's time to file a complaint to determine dischargeability, on the ground that Benedict waived her right to object to the expiration of the deadline date. "Waiver is generally defined as an intentional relinquishment of a known right." *Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 300 (2d Cir. 1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988). In this case, Benedict intentionally waived her right to object to the extension of time given to EAB for the purpose of allowing it to file an untimely complaint to determine dischargeability when she executed the reaffirmation agreement and stipulation a day after the January 10, 1994 deadline had expired. The stipulation, which was signed by both Benedict and her attorney, explicitly stated that, if Benedict rescinded the reaffirmation agreement, then EAB still would have an opportunity to file a complaint to determine the dischargeability of the debt owed by Benedict. In addition, no one has asserted any prejudice attributable to EAB's failure to comply with the original deadline.

Moreover, at the March 3rd hearing on the reaffirmation agreement and stipulation, Benedict had the opportunity to object to the bankruptcy court's extension of time, but failed to do so. Indeed, it was not until Benedict obtained new counsel in the spring of 1994, after the March Order already was in effect, that Benedict finally objected to the extension of time. We think that it would be inequitable to allow Benedict to enter into a stipulation extending the time for EAB to file a complaint to determine dischargeability and then to allow her to object to an order extending the time once the stipulation no longer serves her purposes. The entry of new counsel should not make a difference. New counsel cannot be permitted to disaffirm a stipulation entered into by his predecessor. Accordingly, we think that the bankruptcy court's March Order was proper and should not have been rescinded for lack of jurisdiction.

### CONCLUSION

We vacate the judgment of the district court and remand for further proceedings in accordance with the foregoing.