In re Sandra M. ROLLINSON, Debtor.

No. 99–33281 (AS).

United States Bankruptcy Court,
D. Connecticut.

Feb. 19, 2002.

John S. Demetre, Yudkin & Young, Shelton, CT, Timothy M. Pletter, Stratford, CT, John R. Williams, Williams & Pattis, LLC, New Haven, CT, for debtor.

## BRIEF MEMORANDUM AND ORDER DENYING MOTION TO REOPEN CASE

ALBERT S. DABROWSKI, Bankruptcy Judge.

The Debtor's *Motion to Reopen Case to Amend Schedule F and Add Creditor* ("Motion to Reopen"), Doc. I.D. No. 8, and the *Objection to Motion to Reopen and Add Creditor* ("Objection"), Doc. I.D. No. 14, of the proposed new creditor, Robert J. Penzerro ("New Creditor"), whose claim ("Claim") was not listed or scheduled during the pendency of the Debtor's bankruptcy case, are presently before the Court for resolution under somewhat unusual circumstances. Initially, the Motion to Reopen and the Objection came before the Court for a hearing on February 6, 2002, but were marked "Off" at the request of counsel for the Debtor who had earlier and telephonically advised the Courtroom Deputy that the Objection would be withdrawn, with the Motion to Reopen prosecuted thereafter without

pending objection pursuant to this Court's Bar Date Procedure.[1]

The Motion to Reopen is now before the Court through a *Request for Entry of Proposed order* (hereafter, the "Request for entry"), Doc. I.D. No. 18, filed February 11, 2002, pursuant to this Court's Bar Date Procedure. Inexplicably, the Request for Entry cites "11 U.S.C. Section 522(f)"[2] as the statutory basis for the Motion to Reopen and asserts therein that "no objections to the [Motion to Reopen] ... *have been filed* with the Court" (emphasis added). Notwithstanding the aforementioned representations to the Clerk, as of February 15, 2002, the Objection has not been formally withdrawn.

■ It is significant that the exclusive relief requested in the Motion to Reopen is the reopening of this closed no asset case to permit the Debtor to "file an Amendment to Schedule F [to include the claim of the New Creditor]." It appears that both counsel for the Debtor and the New Creditor *May* labor, or have previously labored, under the mistaken belief that the filing of a new Schedule F in a reopened Chapter 7 case affects the applicability of the Debtor's discharge, determines the dischargeability of the Claim, or impacts state court litigation related to the Claim.[3] The mere filing of amended schedules in a reopened

case, however, does not impact the dischargeability of any debt to an omitted creditor is determined solely by reference to the standards of Section 523(a)(3)—a determination which is unaffected by a debtor's late scheduling of a debt. *See, e.g., Zirnhelt v. Madaj (In re Madaj),* 149 F.3d 467, (6th Cir.1998); *In re Keenom,* 231 B.R. 116, 120–121 (Bankr.M.D.Ga. 1999); *In Re Mendiola,* 99 B.R. 864 (Bankr.N.D.Ill.1989).

■ Under the circumstances of this no-asset Chapter 7 case, the impact of Section 523(a)(3) is plain. If the Claim is *not* of the type specified in Section 523(a)(2), (4), or (6), it was discharged in this bankruptcy case. *See* 11 U.S.C. §§ 523(a)(3)(A); 727(b). If, however, the Claim *is* of the type specified in Section 523(a)(2), (4), or (6), it was *not* discharged, and is not dischargeable, in this bankruptcy case. *See* 11 U.S.C. § 523(a)(3)(B); *Keenom,* 231 B.R. at 121 n. 5. Thus, the dischargeability of the Claim ultimately turns on whether it is a debt of the type specified in Section 523(a)(2), (4), or (6); and that is a determination which can be made by this Court—upon proper motion and/or complaint under Section 523(a)(3)— or by the Connecticut Superior Court.[4] *See Mendiola,* 99 B.R. at 870.

1. Neither counsel for the Debtor nor counsel for the New Creditor appeared at the call of the calendar on February 6, 2002. On that date the Court planned to solicit from appearing counsel the precise nature of the relief requested and to discuss the practical ramifications of exercising jurisdiction to determine dischargeability issues, if in the nature of the relief requested, and to accommodate the interests of both parties, and the Connecticut Superior Court, where reasonable and appropriate.

2. The Motion to Reopen was filed pursuant to Code Section 350(b).

3. The Objection alleges that the Claim is the subject of a pending civil action in the Con-

necticut Superior Court; and that the Complaint in that action alleges facts sufficient on their face to support a finding of non-dischargeability under Bankruptcy Code Section 523(a)(b).

4. The state courts have concurrent jurisdiction with the United States District Courts to determine, *inter alia,* proceedings under Section 523(a)(3). *See* 28 U.S.C. § 1334(b) (2001). Assuming, as is reasonably permitted by the record, that the dischargeability of the Claim will ultimately be determined by reference to Bankruptcy Code Sections 523(a)(3) and (a)(6), the interest of judicial economy may be better served by a State Court determination of that issue. In either a federal or

Accordingly, because the limited and specific object of Motion to Reopen—the mere filing of an amended Schedule F—has no effect on the pending litigation between the Debtor and the New Creditor in the Connecticut Superior Court, and is superfluous to the calculus necessary to determine dischargeability, the Motion to Reopen should be and hereby is DE-NIED.[5]

IT IS SO ORDERED.

state forum, *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that Section 523(a)(6) renders non-dischargeable "only acts done with actual intent to cause injury", not merely "acts, done intentionally, that cause injury"), must be applied to the factual record. Whereas the Connecticut Superior Court plainly has jurisdiction to determine the validity and extent of the Claim together with its dischargeability, this Court may only enjoy jurisdiction to determine dischargeability. Thus, if this Court were to determine the Claim to be non-dischargeable, a duplicative evidentiary record—both testimonial and documentary—might thereafter be required to liquidate the Claim on its merits in state court.

5. On past occasions, the Court has granted motions similar to that presently before the Court, determining that limited "cause" exists to reopen and amend Schedule F—*i.e.* to insure the completeness and accuracy of the Court file and record, where a reopening for that limited purpose imposes no prejudice on the new creditor. Having now revisited this issue, and having now balanced this very limited "cause" against the inconvenience to the Clerk and the Court, and the potential inconvenience and confusion of all creditors who are noticed with an amended Schedule F, the Court deliberately departs from its prior practice.